UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMANDA HICKMAN,<br><br>    Plaintiff,<br><br>v.<br><br>PRUCO LIFE INSURANCE COMPANY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 23-CV-11676-AK<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

**ANGEL KELLEY, D.J.**

  Plaintiff Amanda Hickman ("Hickman") brings this action against Defendant Pruco Life Insurance Company ("Pruco") after Hickman's life insurance policy was terminated by Pruco due to Hickman's failure to timely pay the annual premium. Hickman now brings this action for declaratory relief under Mass. Gen. Laws ch. 231 (Count I), breach of M.G.L. ch. 93A and ch. 176D (Count II), and for breach of the covenant of good faith and fair dealing (Count III). Defendant has filed a Motion for Judgment on the Pleadings. [Dkt. 1-1 ("Compl.")]. For the following reasons, the Pruco's Motion for Judgment on the Pleadings is **GRANTED**.

**I.  BACKGROUND**

  Plaintiff Amanda Hickman operates a professional consulting business in Concord, Massachusetts. [Dkt. 1 at ¶ 5]. On April 19, 2018, she purchased from Pruco a life insurance policy ("the Policy") that insured the life of her business partner, Nicholas Noyes. [Compl. at ¶ 8]. Hickman was the owner and beneficiary of the two-million-dollar policy. [Id.]. Under the terms of the Policy, annual premium payments of $6,965 were due on April 19 of each year the

1

Policy was in effect. [Dkt. 15-5 at 6]. If the Policy lapsed due to non-payment of a premium, the policy provided a 31-day grace period in which the premium could still be paid. [Dkt. 15-1 at 11]. After that period, a reinstatement provision applied which gave Pruco the ability to require proof of insurability before approving any reinstatement. [Id.].

As alleged by Plaintiff, April 19, 2022 was the due date for Hickman's premium. [Compl. at ¶ 18]. Due to nonpayment of that premium, on June 23, 2022, Pruco sent a letter to Hickman letting her know that the Policy had lapsed. [Id.]. That June letter, which is incorporated by reference into this Complaint, informed Hickman that she could still apply to reinstate the Policy. [Dkt. 6-1]. It advised Hickman to apply for reinstatement by calling a number for one of Prudential's financial professionals to receive a reinstatement application and to learn the payment amount she needed to submit. After receiving this letter, Hickman sent Pruco a check for $6,965.00. [Compl. at ¶ 19]. At first, Pruco endorsed and deposited this check. [Id. at ¶ 20]. In a letter dated July 20, 2022, Pruco wrote again to Hickman and stated that it would not waive a demand for a reinstatement application for the insured and would instead send Hickman a check back for $6,965.00. [Id. at ¶ 21].

Under M.G.L. ch. 175 §110B, a life insurance policy shall not terminate sooner than three months after non-payment of an annual premium, unless the insurance carrier provides a reminder notice to the insured or another designated individual between 10 to 45 days before the premium is due. If this notice is properly given, the policy can be allowed to lapse after one month of non-payment has eclipsed. M.G.L. ch. 175 §110B. Pruco contends, and Hickman disputes, that it sent the necessary notices to permit its cancellation of Hickman's policy after her non-payment. Pruco asserts that it sent Hickman a notice by mail dated March 24, 2022 ("the March 24 letter"), reminding Hickman that the premium of $6,965 was due by April 19, 2022.

[Dkt. 6-4 at 6]. Pruco also contends that it sent a notice by mail dated May 31, 2022 ("the May 31 letter") informing Hickman that Pruco had not yet received the required premium payment, and consequently that the Policy had lapsed on May 20, 2022. [Dkt. 6-2 at 2]. That notice allegedly stated that Hickman could reinstate the Policy by making the required premium payment by June 20, 2022, and that she additionally would not be required to answer any health questions to reinstate the Policy. [Id.].

Hickman contests these facts and instead alleges that no such notices were ever sent. [See Compl. at ¶¶ 22-23]. Specifically, Hickman asserts that Pruco has provided no proof that a premium notice was sent to the insured, or owner of insurance producer at the correct address, within the required time before the alleged due date. [Id. at ¶ 22]. Hickman also asserts that Pruco did not send a notice of lapse to the insured or the owner at the correct address as they would be required to do under Mass. Gen. L. c. 175 § 187C and 187D. [Id. at ¶ 23].

On February 10, 2023, Plaintiff sent to Pruco through her attorney a demand for relief under M.G.L. ch. 93A, the Massachusetts Consumer Protection Act. [Dkt. 7 at 52]. In this letter, Hickman asserted that the termination of the Policy was unlawful under Massachusetts law, and demanded proof that, among other things, Pruco sent notices (1) reminding Hickman that the premium payment was due by April 19, 2022 and (2) informing Hickman the Policy had lapsed after payment was not received by that date. [Id.]. Pruco responded within 30 days to Plaintiff's demand on March 9, 2023 via a letter which attached the notices that Hickman denied ever receiving. [Compl. at ¶¶ 35-36; Dkt. 15-5]. On June 7, 2023, Plaintiff then filed her Complaint in the Middlesex Superior Court. [Compl.]. On July 26, 2023, Pruco removed that action to this Court. [Dkt. 1].

## II.   LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Fed R. Civ. Pro. 12(c) is "treated much like a Rule 12(b)(6) motion to dismiss." Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  In evaluating such a motion, the court "must accept all of the nonmovant's well-pleaded factual averments as true," Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988), and the court "may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point." R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).  Further, "Rule 12(c) does not allow for any resolution of contested facts," and the court may not enter judgment on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rivera-Gomez, 843 F.2d at 635.  Unlike a Rule 12(b)(6) motion, which confines the court to contemplation of only the complaint, a Rule 12(c) motion permits the court to consider the pleadings as a whole. Aponte-Torres v. Univ. Of Puerto Rico, 445 F.3d 50, 54–55 (1st Cir. 2006).  The court may also consider "documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (citation omitted).  This includes documents included in the movant's pleading, and other "facts susceptible to judicial notice." Sevelitte v. Guardian Life Ins. Co. of Am., 55 F.4th 71, 76 (1st Cir. 2022) (quoting Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018)).

## III.   DISCUSSION

Much of how the Court can evaluate Defendants' Motion for Judgment on the Pleadings turns on which documents the Court is permitted to consider.  Plaintiff contests the Court's ability to review the life insurance policy, the additional notices that were sent to her, and

4

Pruco's response to Plaintiff's 93A demand letter (which included a number of those additional notices, an affidavit attesting to the notices being sent, and the application to fill out for reinstatement). [Dkt. 20 at 8].

Here, the Court takes judicial notice of the Policy since it has been incorporated by reference into the Complaint and its authenticity has not been disputed by either party. Curran, 509 F.3d at 44. Plaintiff contests the Policy as being not an accurate copy of their agreement because of the coding on the page and because it includes the word "specimen." Instead, however, this appears to indicate that the attached Policy is a replica of the original.[1] Significantly, Defendant does not otherwise contest the substance of what that copy of the Policy otherwise contains. [Dkts. 20 at 9; 15-1]. Moreover, evaluating any of Plaintiff's claims, especially for declaratory judgment and for breach of covenant of good faith, would be impossible without referencing the Policy that Plaintiff's complaint is based upon.

Defendant also seeks to incorporate their response to Plaintiff's 93A Demand Letter, which Plaintiff addresses in her Complaint. Plaintiff in her Complaint states that the letter was not received within 30 days and also alleges that it contained a materially false statement in violation of Mass. Gen. Laws ch. 93A ("Chapter 93A") and Mass. Gen. Laws ch. 176D ("Chapter 176D"). [Compl. at ¶¶ 35-43]. Accordingly, because Plaintiff relies on the document as part of the basis of her Complaint, it is incorporated by reference. The 93A response also contains a notice dated March 24, 2022, which reminded Plaintiff about her upcoming April 19 payment deadline[2] and an additional document dated May 31, 2022 informing Plaintiff about the

---

[1] As Defendant attests, the Policy presented to the Court, which is otherwise a true and correct copy, is slightly altered to redact personal identifying information. [Dkt. 16 at ¶ 3].

[2] One of the documents whose authenticity Plaintiff contests is a notice sent prior to the policy lapsing on March 24, 2022. [Dkt. 20 at 8; Dkt. 15-2]. Defendant previously referred to this March 2022 notice in its answer but instead attached a notice dated March 24, 2020. [Dkt. 6-3]. Rather than undermining the notices' authenticity, the March

5

missed payments and the application for reinstatement. [Dkt. 15-5]. Plaintiff challenges these additional documents and notices as being hearsay. The Court disagrees. The affidavit provided by the Defendant is prima facie evidence that the notice was mailed by the company according to the requirements under Massachusetts law. [Id. at 5]; Mass. Gen. Laws ch. 175, §110B ("The affidavit of any officer, clerk or agent of the company, or of any other person authorized to mail such notice, that the notice required by this section has been duly mailed by the company in the manner hereinbefore required, shall be prima facie evidence that such notice was duly given."). The affidavit, which attests that the records were made at or near the time the information was transmitted and that they were made as a regular practice in the course of the Defendant's regular business activities, would also qualify under the exception to the rule against hearsay for records kept in the regular course of business. Fed. R. Evid. 803(6).

Having considered the documents attached to the Chapter 93A response as being incorporated by reference, the Court subsequently finds that the facts Plaintiff alleges do not sustain her claims. The dispute over whether these notices were sent is a significant aspect of Plaintiff's claims. [Compl. at ¶¶ 22-23, 26, 42]. However, even absent their incorporation by reference, Plaintiff's factual allegations nonetheless fail to support her claims. This is especially true given that the Policy would have lapsed regardless, as per its express terms.

### A. Chapter 93A and 176D (Count II)

Hickman brings two interrelated claims by asserting that Pruco violated Chapter 93A and Chapter 176D. Hickman alleges that Pruco violated these two statutes by: misrepresenting provisions of the Policy; compelling Hickman and Noyes to institute litigation to recover amounts due under the Policy; endorsing and depositing the July 10 check but nevertheless

---

2020 notice appears to be inadvertently included. The correct copy of the March 2022 notice was included in the Chapter 93A response. [Dkt. 15-5].

6

proceeding to refund the payment and terminate the Policy; failing to provide proof that Pruco timely sent premium notices to Hickman or Noyes; demanding that Hickman or Noyes complete a reinstatement application even though the Policy never lapsed; and by failing to implement a plan in response to Bulletin 2020-05.[3]  [Compl. at ¶¶ 32-43].

**1. Chapter 93A**

Chapter 93A is a Massachusetts consumer protection statute that provides a private right of action for those injured by deceptive and otherwise unlawful acts that take place in the course of commerce.  Chapter 93A does not offer "an overly precise standard of ethical or moral behavior," but rather, "is the standard of the commercial marketplace."  Baker v. Goldman, Sachs & Co., 771 F.3d 37, 50 (1st Cir. 2014) (citation omitted).  In order for a Chapter 93A claim to be viable, a defendant's actions must be egregiously wrong, and "the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce."  Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 41–42 (1st Cir. 1998) (citation omitted); see also Baker, 771 F.3d at 51 (confirming that "egregious" remains a consistent aspect of the Chapter 93A standard).  Mere breach of contract, on its own, does not represent a violation of Chapter 93A.  Incase Inc. v. Timex Corp., 488 F.3d 46, 57 (1st Cir. 2007).

To evaluate whether the challenged practice is unfair under Chapter 93A, courts consider "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or

---

[3] Bulletin 2020-05 was a bulletin issued by the Massachusetts Division of Insurance instructing insurers to modify their practices in response to the COVID-19 public health emergency.  [Dkt. 7 at 7].

other businessmen)." Gottlieb v. Amica Mut. Ins. Co., 57 F.4th 1, 9 (1st Cir. 2022) (citation omitted). To succeed in bringing a Chapter 93A claim on the theory of deception, "a consumer must show (1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." Id. at 10. A practice can be considered deceptive if it "could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted." River Farm Realty Tr. v. Farm Fam. Cas. Ins. Co., 360 F. Supp. 3d 31, 40 (D. Mass. 2019), aff'd, 943 F.3d 27 (1st Cir. 2019) (citation omitted).

Plaintiff's Chapter 93A claim fails for two reasons. First, it does not allege facts which, even if taken as true, rises to the level of deception necessary to sustain such a claim. Second, Plaintiff fails to demonstrate how Defendant's actions would have caused her injury. Plaintiff's allegations against Defendant for unfair or deceptive acts rely largely on conclusory statements rather than any particular misconduct conducted by Pruco. The allegation that Defendant violated Mass. Gen. Laws. ch. 175 §110B because Plaintiff did not receive the necessary notices is contradicted by the fact that Defendant has provided proof of said notices along with the affidavit attesting to their authenticity. [See Dkt. 15-5]. Even if Plaintiff established that errors were committed regarding the sending of these notices, such allegations would hardly be considered "immoral, unethical, oppressive, or unscrupulous" as they would have to rise to the level of a Chapter 93A violation. Gottlieb, 57 F.4th at 9.

Plaintiff cannot meet the causation requirement because she cannot demonstrate that her allegations against Plaintiff caused her harm because the lapse of the policy was caused by the nonpayment—rather than any of Defendant's actions. Plaintiff does not dispute that she failed to make her premium payment by April 19, 2022 premium. [See Compl. at ¶ 18]. The same is true

of the subsequent actions taken by Plaintiff, wherein she did not take advantage of the opportunities made available to her to get her Policy reinstated.  After Plaintiff's policy lapsed due to this nonpayment, she could still have followed the instructions on the May 31 notice and would have been able to have the Policy reinstated without having any additional health questions answered.  [See Dkt. 6-2 at 2].  She missed that deadline enclosed therein and then also declined to fill out the application for reinstatement that was provided in the June notice. [See Dkt. 6-1; Compl. at ¶¶ 18-21].  Given that the only harm alleged is the lapse of the policy, and because the policy would have lapsed regardless due to Plaintiff's nonpayment, Plaintiff therefore is unable to establish that Defendant's actions caused the harm alleged.  [Compl. at ¶¶ 41-42].

Even if Plaintiff's notices were shown to be insufficient under Massachusetts law, such violations would not constitute a per se violation of Chapter 93A.  Shaulis v. Nordstrom, Inc., 865 F.3d 1, 10 (1st Cir. 2017) ("a claim that alleges only a 'per se' injury—that is, a claim resting only on a deceptive practice, regulatory noncompliance, or the impairment of an abstract right without economic loss—is insufficient to state a Chapter 93A claim") (internal quotations omitted).  Plaintiff's argument that Defendant was not in compliance with an insurance bulletin similarly cannot revive her 93A claim.  [Id. at ¶ 42 (h)].  The insurance bulletin in question called for life insurance companies to look for ways to relax due dates because of the interruptions caused by the COVID-19 Pandemic.  [Id. at ¶ 13-15].  The bulletin Plaintiff highlights though was not legally binding and as such cannot form the basis of her claim.

Golchin v. Liberty Mut. Ins. Co., 950 N.E.2d 853, 861 (Mass. 2011) (describing how a bulletin is different from a binding regulation as it does not have the force of law).

As part of her 93A claim, Plaintiff also makes reference to proof of notices that are required under Mass. Gen. Laws ch. §187C and §187D. [Compl. at ¶ 42 (f)]. However, neither statute is applicable here as both refer to insurance policies that are cancellable unilaterally by the insurer, rather than policies like Plaintiff's which were not. Mass. Gen. Laws ch. §187C ("A company issuing any policy of insurance which is subject to cancellation *by the company* shall effect cancellation by serving the notice thereof . . . ."); Mass. Gen. Laws ch. §187D ("A company issuing any policy of insurance which provides for cancellation *by the company* upon giving written notice to the insured . . . .") (emphasis added in both); see Kavanagh v. New York Life Ins. Co., 170 F.3d 253, 257 (1st Cir. 1999) (holding that policy that lapsed due to non-payment of premium does not fall under Section 187C). The Policy in question here was not subject to cancellation unilaterally by Defendant and accordingly Plaintiff cannot rely on §187C or §187D to support her claim.[4]  [See Dkt. 15-5].

**2. Chapter 176D**

Chapter 176D is a Massachusetts statute that proscribes various unfair claim settlement practices. Hickman specifically cites M.G.L. ch. 176D §3(9)(a) and (g). [Compl. at ¶ 41]. Section 3(9)(a) defines "misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue" as an unfair claim settlement practice, and Section 3(9)(g) defines "compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such

---

[4] Plaintiff asserts that Defendant violated Section 187 because of its failure to send the requisite notices by certified mail. [Compl. at ¶¶ 22-23; Dkt. 20 at 5]. However, since Section 187 is not applicable to the insurance policy here, the requirements Plaintiff highlights do not apply.

10

insureds" as the same. In order for a Section 3(9)(a) claim to be viable, an insurer must have committed "a misrepresentation of a pertinent fact or policy provision." Martorana v. Progressive Direct Ins. Co., No. 22-CV-10613-DJC, 2023 WL 2465639, at *4 (D. Mass. Mar. 10, 2023). Furthermore, to successfully bring a Section 3(9)(a) claim, a plaintiff must prove the insurer mispresented facts or policy provisions "in bad faith or with an improper motive." Aquino v. Pacesetter Adjustment Co., 416 F. Supp. 2d 181, 192 (D. Mass. 2005).

Hickman, while disputing Pruco's assertion that it indeed did send the required premium due notices, does not offer any examples of misrepresentation of facts or Policy provisions "relating to coverages at issue." The dispute articulated by Plaintiff here is whether Pruco rightly or wrongly terminated the Policy—rather than whether Plaintiff was owed benefits she was denied. All of the misrepresentations alleged by Hickman revolve around the controversy of whether the purported March 24 letter was sent as required under law. [See Compl.]. She does not allege, for example, that Pruco misrepresented the Policy's premium due date or Pruco's termination policy before this dispute. Although Hickman vaguely avers that she suffered unspecified damages, nowhere in her complaint does she assert or even imply that she submitted a claim to Pruco, especially considering the fact that the insured, Noyes, is alive. [Dkt. 15 at 18 n.6]. Although Hickman has indeed instituted the instant litigation against Pruco, its ostensible

11

purpose is to seek relief related to the reinstatement of the Policy, not the failure of Pruco to fairly pay out a claim. As such, Plaintiff has not articulated a viable claim under Chapter 176D.

### B. Breach of Covenant of Good Faith and Fair Dealing (Count III)

The covenant of good faith and fair dealing is implied in every contract under Massachusetts law. Linton v. New York Life Ins. & Annuity Corp., 392 F. Supp. 2d 39, 42 (D. Mass. 2005). It is breached when a defendant deprives a plaintiff of the intended fruits of the contract. Id. The implied covenant though does not "'create rights and duties not otherwise provided for in the existing contractual relationship,' and instead focuses on 'the manner of performance.'" Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 238 (1st Cir. 2013) (quoting Ayash v. Dana–Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005)). Plaintiff claims that Defendant violated the covenant of good faith and fair dealing but she fails to explain how Defendant's actions constitute a breach. [Compl. at ¶¶ 44-49]. At most, the claim is underpinned by Plaintiff's claim that Pruco had facts to conclude that the Policy had not lapsed and therefore had no reason to demand a reinstatement application. [Id. at 48].

Plaintiff's claim is unavailing. Since Plaintiff concedes that she missed the April 19 payment and failed to pay within the subsequent 31-day grace period, per the Policy's express terms then Pruco had a right to require Plaintiff demonstrate her eligibility for reinstatement. [See Dkt. 15-1 at 11; Compl. at ¶¶ 18-19; Dkt. 6-1]. The idea that Defendant was not operating in good faith is further undermined by the fact that, even after the missed payments, Defendant reminded Plaintiff that she could apply for reinstatement and provided her with an application for which to apply. [Dkt. 15-5]. Given the fact that the Defendant's actions were aligned with their written agreement, Plaintiff has not demonstrated how Defendant denied her the fruits of the

contract she agreed to. Accordingly, the Court dismisses Plaintiff's claim for a breach of the covenant of good faith as a matter of law.

### C. Declaratory Judgment (Count I)

Plaintiff also seeks declaratory judgment to affirm that she met all her obligations under the Policy, that Defendant was not in compliance with its own obligations, and that accordingly that the Policy either should never have lapsed or it should have been reinstated when the check she sent was deposited. [Compl. at ¶¶ 25-30, 31]. Hickman's request sounds in equity and is evaluated pursuant to federal Declaratory Judgment Act, 28 U.S.C. §2201.[5] The Act permits but does not mandate courts to, "[i]n a case of actual controversy within its jurisdiction … declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201. An actual controversy in the context of a request for declaratory relief involves a substantial controversy of sufficient immediacy between parties holding adverse legal interests. In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 919 F.3d 638, 645 (1st Cir. 2019). In such cases, courts wield substantial discretion in determining whether to grant or withhold declaratory judgment. Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995).

Plaintiff cannot sustain her claim for declaratory judgment, given the facts that demonstrate that the Policy lapsed as per its express terms. The Policy conditions its continued

---

[5] The Complaint seeks declaratory relief pursuant to M.G.L. ch. 231 ("Chapter 231"). [Compl. at ¶¶ 24-31]. This action originated in state court and was removed to this Court on the basis of diversity; because a declaratory judgment is merely a procedural mechanism, conflicting federal law will prevail over Massachusetts law. "It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases. While state law must determine the substantive rights and duties of the parties to the insurance contract, the question of justiciability is a federal issue to be determined only by federal law." Tocci Bldg. Corp. of New Jersey v. Virginia Sur. Co., 750 F. Supp. 2d 316, 320 n.2 (D. Mass. 2010) (quoting Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 352 (3d Cir. 1986)). Thus, this request will be evaluated pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §2201. See Jensen v. Jensen, No. CIV.A. 10-11353-DJC, 2011 WL 2174898 (D. Mass. June 3, 2011) (ruling on a Chapter 231 request, removed on a diversity basis, through the application of the Declaratory Judgment Act).

coverage on the timely payment of premiums, which Plaintiff concedes were not paid by April 19. [See Dkt. 15-1 at 11; Compl. at ¶¶ 18-19]. Plaintiff additionally argues that the Policy should have been reinstated when she sent, and Defendant endorsed and deposited, a check for $6,965.00. [Compl. at ¶ 31]. Again however, the Policy's terms make clear that the payment of a check past its due date does not automatically lead to its reinstatement, especially because the Policy puts in additional conditions that Plaintiff must meet prior to reinstatement which make clear that reinstatement is conditioned on the insurer's approval. [Dkt. 15-1 at 9].

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is **GRANTED** and this matter is **DISMISSED**.

**SO ORDERED.**

Dated: May 17, 2024 /s/ Angel Kelley
Hon. Angel Kelley
United States District Judge